Mr. Alioto, right? Yes, Your Honor. My name is Joseph Alioto. I represent the appellants. I am here and assisted with Mr. Gil Messina and Ms. Jamie Miller and also Ms. Theresa Moore. I would respectfully request a five-minute rebuttal, if I might. That's fine. Very good. The issue that is presented is whether or not under Rule 12b-6, whether we stated a cause of action. This is the second time we've been here because we are here originally on the preliminary injunction. The real question is whether or not under Section 7 of the Clayton Antitrust Act, whether or not in determining a relevant market, one can view it from the supply side as well as demand. So in other words, what happened in the lower court is that we claimed that there was a national market of airline industry. In other words, that the airlines compete against each other. The court below was of the opinion, and the prior case by this circuit in the preliminary injunction was that no, because there's no competition for passengers. When passengers choose, they don't they there's no interchangeability between a flight from San Francisco to New York and a flight from Miami to Dallas. It doesn't make any difference what the price, even if the prices went up for the trip to Dallas, that would not make someone change their mind and go to Dallas instead of New York. Isn't that the law of the case? It is not the law of the case, as we pointed that out. And in addition, we are suggesting. Tell us why. Because as we point out in the brief, the law of the case with regard to the preliminary injunction is under the preliminary injunction rules. This is, and we cited and we argued, and we cited in our rule 12 motion opposition, that the market was consistently the national market when you view it from the supply side. So in answer to the question, it's a different issue when it comes to 12b6. And when we came even on the injunction, when we came with regard to the injunction under the rules of an injunction, as distinguished from rule 12b6, question here is whether or not it's feasible that there exists a national market and airlines competing against each other. And what we would say is that if, in fact, you had those two runways, one from San Francisco to New York and the other from Dallas to Miami, if the price on Miami went way up, maybe a customer or passenger wouldn't change, but an airline could. And we had the testimony of the chief executive officer of Continental that all he had to do to go into a new market, and he would if it were profitable, is to turn the nose of his airplane and go into that market at 540 miles an hour. After the prior panel affirmed the district court's denial of the motion for a preliminary injunction, and the case was returned to the district court, did you amend the complaint, and if so, how, to clarify your market theory? As we pointed out in the brief, we did amend the complaint, and we also ---- What changes did you make with respect to the market theory? Among other things, we added the fact that, in fact, what we had claimed in the preliminary injunction, in fact, happened, that prices were increased, that capacity was reduced because there was a lessening of competition among and between the airlines, and that, indeed, what we had shown is that they were able, if they wanted to, to go to any market that they wanted to, and that, in fact, afterwards, and after it was ---- after our preliminary injunction was denied, that, in fact, they did the very things that we said that they would do, and they reduced their service, they began to charge for things that otherwise were amenities. And that's all in the amended complaint? Pardon me? That's all in the amended complaint? Yes, Your Honor. We have put out substantially, yes, but what we have also done, because ---- Did the district court view the amended complaint as any different than the original complaint? I believe that the only thing that the district court said that was different was that we then, because the merger was allowed, we changed Section 16, which is the injunction, and we added Section 4 for damages. So we originally ---- So did he entirely misread the amended complaint when he compared ---- looked at the amended complaint and compared it to the original complaint, did he misread it? Yes, absolutely, in my opinion. And, I mean, I think it's very clear he thought ---- he believed, as did this Court and as the Court did in the FISA case, which is also cited, that you only look at exchangeability on the basis of from the demand side or the customer side or the passenger side. But as we pointed out, in every one of the Supreme Court decisions, right in a row, seven of them right in a row, they also say you look at the market from the demand side as well. So you look at, is there ---- is there competition among the airlines? You mean the supply side as well? I mean the supply side. I'm sorry. So in addition to the demand, there's also ---- all of the cases, as we cited, also from the supply side. And it's ---- and that is a matter, among other things, of common sense. When you were before the prior panel, did you make this argument? I certainly believe I did. Well, did you? If I were to go back and listen to the tape, listen to the audio from the prior argument, would I hear this argument that you're making to us today? All I can say is I hope so, Your Honor. Well, I don't know. We have ---- we have started, when we started with the preliminary injunction, our principal piece of evidence is that among the airlines, there's no ---- they can go into any market they want to. I mean, the way that is ---- When I read your brief, I mean, I ---- it makes sense, and the Supreme Court has acknowledged that you consider supply demand as well, or cross-elasticity of supply, whatever it's called. And, you know, it looks like your theory ---- you have a theory there, but the problem is it's not the way it was argued. And as Judge Hawkins pointed out, it looks like, in light of the allegations of the complaint and the way in which the complaint was minimally amended, that you got a law of the case problem. And then you have to convince us that the prior panel was clearly erroneous in the way in which it based its ruling. Well, may it please Your Honor ---- That's a pretty high ---- May it please Your Honor, our complaint was very clear. And the amended complaint, and we put out the allegations of the amended complaint to make it very clear at page 7 of our reply brief when that issue was brought up. And what we said very clearly is that both Continental and United were not only actual competitors, but potential competitors, just like Falstaff, exactly the same way, so that one could constrain the price of the other in a market that they weren't even in, because they could go there. So if there was something to be made and profits to be made from Dallas to Miami and Continental was not in it, they had the potential and wherewithal to go there. And as you can tell from the testimony of the chief executive officer from Continental, he could go to any market he wanted to at 540 miles an hour, if you were an established airline. So that is competition among and between the airlines. We made that ---- Sotomayor, it sounds to me you're pretty clear in your argument that you think the preliminary injunction appeal panel was wrong. Yes, Your Honor. And no fault of yours, you didn't convince them. And now you're essentially arguing to us, having not materially amended your complaint in terms of allegations of market, you're asking us to overrule that preliminary injunction panel, right? What I'm saying, not to overrule it, because you can't, because they've already consummated the merger. And I've already changed or added the allegation of section 4 for damages. You cannot change that ruling, because they've consummated it. But what you can say is that the law in determining a relevant market includes the supply side. And the Court there was not able to do that. Counsel? Yes, Your Honor. Counsel, Judge, could I ask you one question to clarify this in my mind? Yes, Your Honor. Is there anything about the different standards of review on a preliminary injunction on the one hand and on 12b-6 on the other that bears on the law of the case issue that's before us? Yes, there is, Your Honor. And I think that's a good question, because when the prior panel was looking at it, they were looking at likelihood of success and the other winter factors, I guess. But with the 12b-6 motion, it's really a question whether your allegations plausibly state a claim for relief under, you know, the fact whether you can prove facts to show that. Exactly, Your Honor. That's true. And so 12b-6 challenges the validity of the complaint. So it says even if you say what you say is correct, does it state a cause of action? Under the preliminary injunction is the usual injunction issues. So those would be irreparable harm, likelihood of success, balancing of the harms, and things like that. So the standards are entirely different. And in the injunction, we were, of course, seeking to stop the merger itself. And in order to stop the merger itself, again, under Section 16, it says what may happen in the future. And so it's an entirely different standard altogether. But you do have to determine somehow or other what a relevant market is or some view as to what you're going to measure the activity of the defendants. And we amended to include Section 4. We amended to show that they did what we said that they were going to do, all anti-competitive effects. And we likewise then had the very high standard in this case of coming over Twomley as to whether or not what we said was feasible. So it's an entirely different standard of review, an entirely different issue. Thank you. Did you want to save the rest of your time for rebuttal? I would like to, Your Honor. All right. You got it. Thank you very much, sir. Oh, excuse me, if I might, if I might take just 50 seconds and say, also, I want to point out that in the preliminary injunction, those the attorneys were representing to the court and the expert was representing to the court that there was no such thing as a national market when they had already represented to other Federal courts exactly the opposite. Thank you. Okay. Thank you. Got it. Good morning, Your Honors. Jim Donato for the Appellee Airlines. My opponent has graciously admitted this is our second trip back to this Court on the same issue, which is, has the plaintiff stated a viable, facially sustainable, relevant market? Isn't that quite the same issue? I think it is, Your Honor. As Judge Gould pointed out, it's different. Your Honor, I would push back on that. I think it is the same issue. Well, no, in the preliminary injunction, the question is, you're reasonably likely they had to show that they're reasonably likely to prevail on the merits. That's true. That's a different standard. That's a different standard. But to state in either a complaint or in any other portion of an antitrust case, an antitrust section 7 claim, you must define a facially sustainable, relevant market. That issue is the same, regardless of the procedural portion of the case that you're in. Well, let me ask you this. So they alleged a national market. They not only alleged it, they insisted on it. They argued it. Absolutely. And the prior panel said no, the district court said that doesn't do it. And you can't never – you can never prevail on that as a matter of law. That's correct, Your Honor. And the circuit bought that. That's correct. Agreed. That's correct. Were they foreclosed from going back down to amending the complaint to alleging more facts? Absolutely. Absolutely, Your Honor. Why? And here's why. Why are they stuck – why are they stuck with the allegations in their original complaint and the theory in their original complaint after the preliminary injunction is denied? Why can't they go back and amend the complaint to make it clear that they're alleging also a supply side? For at least two reasons. And before I forget, I do want to get back to the supply side across the elasticity argument at the end of this. But there are at least two reasons why this Court absolutely should not and cannot allow them to amend. The first reason is – Well, the district court did allow them to amend. But not on remand from this Court and remand in response to today. No, no, no. But they could have gone back down. Yes. Oh, absolutely. They weren't stuck with their original complaint. They could go back down and they could amend it, right? And they did. They not only amended it, they filed a supplemental complaint. It's hard to phrase these things without sounding like silly puns, but they had plenty of runway in this entire case to do whatever they wanted to do in defining a relevant market. More importantly, unlike 99 percent of the other litigants in our cases, they had expressed instructions from this Court on how to do that. They chose deliberately and expressly not to do it. My opponent feels very strongly that the district court and this Court erred. That is not the issue before the Court today. The issue is did they conform their complaint. Yes, Your Honor. What's bothering me, which I expressed in my earlier question, is that the standard is so different on preliminary injunction and on a 12b-6. So, I mean, it's — I'm not sure why, if they can prove any set of facts to support their complaint, I'm not sure why we should read the prior decision on preliminary injunction as foreclosing their national market theory on a 12b-6 basis. Your Honor, the answer to that — Maybe you could address that. Absolutely. The answer to that is this case — is this Court's prior holding in the Rancher's-Cattleman case, the case that we cited, that case held that a law — a legal issue resolved in the preliminary injunction context, exactly like here, is binding on this Court and on the district court and all subsequent proceedings. And, in fact, the plaintiffs in the Rancher's-Cattleman case were in exactly the same situation as my opponent. They faced a decision from this Court that they disliked. They sought summary judgment. The district court said, my hands are tied by this Court's, the Ninth Circuit's, prior ruling. I'm going to deny summary judgment for you, and I'm going to grant it for the responding party. And this Court in Rancher's-Cattleman affirmed that. I thought we were dealing with 12b-6. We are, but this Court — It's different than the summary judgment. No, it's law of the case. Law of the case is the theme that cuts across these issues. No, but we're dealing with different procedural mechanisms. If you want to look at 12b-6 de novo versus law of the case abuse of discretion, if that's the issue that you're raising, I'm happy to address that. But to carry out — just to close out this thought, Your Honor, and judge your specific question, the fact that there is a de novo standard for 12b-6 does not allow them to get out of this Court's prior decision on the legal issue of the correct way of defining the antitrust market. Why couldn't they go back and amend the complaint to address supply side allegations? Two reasons for that, Your Honor. The first is they did not ask for leave to amend before the district court. And this Court- After the — after we affirmed the denial-of-employment act? They had their opportunity to amend. I'm talking about the case that brought us here today, which is the district court's dismissal of the case on the last motion. Right. There was an amended complaint, correct? Amended complaint. And they did add — they did add a few new allegations. I have the complaint right here. They added some facts, and then they filed a supplemental complaint. So they had actually two bites. Okay. But if you go to the amended complaint, like in paragraphs 31 to 36, and then I think over towards the end of the amended complaint, paragraphs like 116 or 117, they did allow — they made some — some generalized allegations. But they didn't argue that to the Court, Your Honor. In response to our motion to dismiss, there was not a single word in opposition based on you should consider cross-elasticity of supply. That argument is — the first time that argument surfaces is in their opening brief for this appeal. It was never raised in the 12b-6 context that has brought us here today, not once. It wasn't argued at the hearing in December of 2011. It was not in the briefs. It was not in any of the prior proceedings in the case. This argument appears for the first time here in this Court. And as you all know better than I do, you can't do that. You can't reverse a district court on an argument made for the first time in this court that was never offered to the district court to consider. You've asked why they shouldn't be allowed leave to remand. It's that reason. That argument has been waived. They have waited way too long to do it. And by the way, the cases that they rely on are Brown-Shue and Charlie Up. These are cases that are decades old. This is not new law. There's nothing new about cross-elasticity of supply as a concept. What's new is they didn't raise it until they came to you in the second appeal. That waives their right. Plus, this Court has held, when you don't ask the district court for leave to amend, you've waived your right to seek leave to amend on appeal. It's the BACCEI case, BACCI, I'll use the Italian pronunciation. We cited it in our brief. This Court has held you can't come to us and ask for leave to amend if you didn't ask the district court first. And they didn't do that. So they've waived it on two separate grounds. Did you get to do a third amended complaint? And drag this case out further? I mean, that just seems like a far out time. So when you said you were going to address the whole notion of cross-elasticity of supply in the market analysis, so what's your point that you wanted to make? Well, there's two points. The first one, it's never come up in this case until now. Right, okay, but beyond there. And the second point is- Defining a market for purposes of a claim. It may or may not be. I don't know the answer to that. Has case law mentioned it? Yes. Has it been a driving factor in determining the definition of a relevant market? No. This Court itself has recognized that the majority approach is to look across the elasticity of demand and interchangeability of use. Maybe there are some occasions when you look at supply, maybe there aren't. But our plaintiffs in this case have not explained how this is even remotely an applicable concept to the airline market, the air transportation market. They've thrown out the concept, but the concept does nothing for the case. They have to explain why it works here to affect the context of their Section 7 claim. That hasn't happened. So in addition to being too late, they're a dollar short. There's just no explanation about why this makes a lick of difference for defining the relevant market in this merger case. Particularly in light of the fact that this merger was approved by the regulatory authority charged with protecting the general public, that's DOJ, not the private plaintiffs here. And in addition to that, DOJ and the GAO have all said that a different market, city pair markets, may be the right standard, not national transportation. Okay. And with that, I'm happy to submit if there are any more questions. Thank you. Mr. Alliotta, you had about three minutes, I believe. Thank you, Your Honor. May it please the Court again. There are two different things that are going on here, which is a suggestion by the defendants. That first of all, everybody involved in this case during the first time was sandbagged because we knew, or they knew, that they had previously agreed to a so-called national market. And they had done so in at least two cases. And they had their expert get up and give testimony in the preliminary injunction on the basis of section 16, which is may the action, may, may, or likelihood to lessen competition or tend to create a monopoly. It's two entirely different standards. We went back. We saw what has happened. We had new facts, new issues, and we gave them to the Court. They were doing exactly what they said that we said that they would do. In addition, we had supplementals from the Department, from the Government Accountability Office as well. And so we not only amended the complaint, but then we supplemented it. And even in before this court now, we have supplemented it with the most recent government accountability study showing in June of, showing that this is now going on in rampant succession because nobody is viewing this as a national market. And so our position is not only in an apparent, apparently it is now conceded that there is such a thing as a national market viewed from the supply side as well, and that the case below is incorrect. And the case below said it wasn't feasible, our claim of a market. And what the court has to determine is under Twombly and under the standard of 12B6, have we stated a cause of action as we noted to you where our allegations are on page 7 of our reply brief. And I will point out that we had additional evidence, of course, to show the very issue. And that is that we pointed out- Counsel. Yes, Your Honor. It's Judge Cook. If I could interject a question. How do you respond to the appellee's argument that the supply side issues were not argued in the district court? And therefore, we shouldn't consider them. Well, I don't know exactly what counsel is referring to, but I can say for sure that we were arguing in the district court what we alleged in the complaint. Which said that there was a national market, which said that Continental was a potential competitor of United in markets in which it did not compete. We said that false staff certainly applies, even if you don't go in the market. If you're on the edge of the market, you are a potential competitor. We argued that the CEO himself said he could go into any market he wanted to by just changing the nose of his airplane. So if that is not arguing supply side, I don't know what is, because that is exactly what it is. And false staff was exactly the same thing. So we have on page 7, 1, 2, 3, it looks like about 14 or 15 different allegations specifically going to supply side. So how it could be argued that we didn't argue that, that we somehow didn't do that, is incorrect on the face of the amended complaint and the supplemental complaint. Okay. Thank you, Mr. Azzar. Thank you very much, Your Honor. Thank you. We appreciate the arguments in this case. The matter is submitted. Thank you, sir.
judges: Hawkins, Gould, Paez